Freeman, J.,
delivered the opinion of the Court.
James Pulliam made a deed of trust in August, 1865, conveying the land in controversy in this case to James M. Gideon, the defendant, as trustee for the benefit of his creditors, among whom was the said Gideon, whose debt amounted to about $600.
Gideon accepted the trust, gave bond, and qualified according to law, and continued to act till July, 1866, when he claims to have resigned his trust, — as he alleges in his answer, because he found that the- deed of trust was fraudulent, and intended to hinder and delay the creditors of Pulliam. In December,' 1867, the complainant Williams was appointed trustee under the deed of trust, by the County Court of Maury county, and at .the October Term, 1868, he filed this bill.
It seems that a small judgment had been rendered *619 against Pulliam by a Justice of the Peace in favor of one Mackey, and execution been thereon issued, and levied on this land, before the making of the deed of trust. The land was condemned and ordered to be sold by the Circuit Court under this levy, and was sold by the Sheriff to one Wortham for about $13. Mrs. Lawrence, the one of the beneficiaries under the deed having the largest debt secured by it, having died, Cranberry, one of the defendants to this bill, was appointed her administrator, and then redeemed the land as such administrator, bidding or advancing the debt of his intestate on the same. After this, defendant Gideon claims to have redeemed from Grahberry, administrator, and to have advanced the amount of his debt on the same. In the meantime, as it is charged in the bill, Williams, after his appointment as trustee, had tendered the redemption money to Wortham, the first purchaser, offering to redeem, but this had been refused.
This bill is filed by Williams to enforce the trust, sell the land, and appropriate the proceeds according to the terms of the deed of assignment made by Pul-liam to Gideon. It goes on the ground that Gideon being a beneficiary under said deed, as well as Mrs. Lawrence, the intestate of Granberry, could not by redeeming the land from Wortham, or from Gran-berry, who had done so, hold the land denuded of the trust, or thus acquire an interest adverse to the trust and maintain it.
We think that, in view of the facts of the case, this is true. It is clear from the proof that Mrs. *620 Lawrence had unequivocally accepted the benefits of the deed of trust. It is equally clear that Gideon had done so likewise, as he accepted the position of trustee, and gave bond for the due execution and performance of the trust; and so with the other beneficiaries mentioned in the deed.
Under this state of facts, we think that the beneficiaries, having become parties to the trust by assent to its terms, could not fairly be permitted to redeem for their own benefit, and hold adversely to the trust, in which they were jointly interested to extent of their debts.
We have been referred to no case holding this precise point, but an analagous principle is well established in the case of tenants in common in a legal title by descent, who are held to be placed in a confidential relation to each other by operation of law as to the joint property, and the same duties are imposed on them as if a joint trust were created by contract between them. In such case, the relation of trust and confidence between them binds all to put forth their best exertions to protect the common interest, and forbids the assumption of a hostile attitude by any of them towards the rest. Tisdale v. Tisdale, 2 Sneed, 599.
While we do not hold that a beneficiary in a case like this is bound, in the language of above citation, to put forth his best efforts to protect the common property, yet we do hold that the fact that he . has a common interest under the deed of trust forbids that he should place . himself *621 in a hostile attitude to his co-beneficiaries. Under the circumstances of this case, as the party claims a common interest in the trust property under the trust deed, ■when he removes an incumbrance it should be removed for the common benefit, and he should hold the property bound by the trust, but entitled to be reimbursed the money expended in removing such in-cumbrance. The Chancellor so held, and we think correctly.
It is insisted in argument that Gideon was not bound by the deed of trust, because the same is fraudulent, and void as to creditors; or at any rate that he had a right to reject its provisions, and secure his debt independently of the deed. But the principle is settled, that a creditor who has confirmed a fraudulent deed by receiving a benefit under it, or has become party to it, is estopped from afterwards impeaching it. See A. L. Cases, vol.' 1, 161. As we have seen, Gideon was not only a beneficiary under the trust; he became a party to the deed by accepting the position of trustee thereunder, and that with full personal knowledge of all that is now alleged to be objectionable therein.
It is insisted that Williams is not shown to be the trustee, and that the answer puts in issue this fact. On looking at the answer it will be found that while it does formally deny the fact in one part of it, in a subsequent part of it the appointment is admitted, but is claimed to be ineffectual, because no sufficient bond was taken, and the requisite oath perhaps not taken.
*622 It is sufficient to say that even a failure of the trustee to give bond as required by the Code, s. 1974, would only furnish ground for his removal, and his having given an insufficient bond, as is alleged, certainly will not invalidate the appointment made by a court having jurisdiction to make it. Mills v. Haines, 3 Head, 332.
The Chancellor having arrived at this conclusion, we affirm his decree. The appellant Gideon will pay the costs of this Court. The costs of the Court be.low will be paid as adjudged by the Chancellor.